UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

YOLANDA KING,

        Plaintiff,

    v.

NANCY A. BERRYHILL,

        Defendant.

Case No. 17-cv-06844-TSH

**ORDER RE: CROSS-MOTIONS FOR SUMMARY JUDGMENT**

Re: Dkt. Nos. 27, 29

## I.    INTRODUCTION

Yolanda King ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of Nancy A. Berryhill ("Defendant"), the Acting Commissioner of Social Security, denying her claim for disability benefits. Pending before the Court are the parties' cross-motions for summary judgment. ECF Nos. 27, 29. Pursuant to Civil Local Rule 16-5, the motions have been submitted on the papers without oral argument. Having carefully reviewed the parties' positions, the Administrative Record ("AR"), and relevant legal authority, the Court hereby **DENIES** Plaintiff's motion and **GRANTS** Defendant's cross-motion for the following reasons.

## II.    BACKGROUND

Plaintiff was born in 1965 and suffers from Post-Traumatic Stress Disorder ("PTSD") and chronic lower back pain. AR 142, 215. She graduated high school and obtained an associate of science degree. AR 241, 304. Before she stopped working on July 15, 2010, Plaintiff's past jobs included work as an executive assistant, administrative assistant, food server, mail sorter, and desk clerk. AR 248, 304.

On October 5, 2010, Plaintiff presented to the Spine Health Clinic at San Francisco General Hospital for an initial consultation. AR 368. Plaintiff reported a history of chronic mid and lower back pain, as well as bipolar disorder. *Id.* She also reported a history of physical abuse, which could have caused her back pain. *Id.* Plaintiff described her pain as 10/10. *Id.* She experienced back pain 85-90% of the time and the pain radiated into her legs 10-15% of the time. *Id.* Her symptoms were constant and worsened with sitting. *Id.* Plaintiff explained she recently stopped working in July 2010 due to back pain and stress. *Id.* She was able to sit for 30 minutes to 1 hour, stand for 1 hour, and had no limitations in walking. *Id.* She had poor sleep due to pain and ruminating thoughts. *Id.* She also experienced feelings of sadness and helplessness, as well as anhedonia and feelings of anxiety. *Id.*

Examination showed tender points with 4kg of pressure at the following: insertion of suboccipital muscle, mid-upper trapezius, under lower SCM, 2nd costochondral junction, supraspinatus, 2 cm distal to lateral epicondyle, near insertion of gluteus maximus, prominence of greater trochanter, medial fat pad of knee, and exaggerated pain behavior. AR 369. Assessment included chronic mid-lower back pain with significant postural issues on examination: shoulder disparity with thoracic offset on right, and unilateral SI joint 23 sclerosis per MRI. *Id.*

On December 6, 2010, Plaintiff followed up with physical therapy. AR 385. She had recently cleaned her house, which made her lower back pain worse. *Id.* Plaintiff attempted physical therapy again on January 12, 2011, but she described her pain as 10/10, including a new pain in her right arm due to a possible pinched nerve. AR 383. She had not slept for 18 hours and went directly to urgent care and rescheduled her physical therapy appointment. *Id.*

That same day, Plaintiff presented to San Francisco General Hospital urgent care for pain in her neck, which radiated into her right arm for the previous 5-6 days. AR 381. She had limited range of motion in her neck due to radiating pain. *Id.* Changing positions and pain medication gave her no relief. *Id.* History included chronic back spasms and lower back pain/mid back pain. *Id.* Symptoms included burning and tingling down her right arm to her wrist. *Id.* Assessment was right levator scapula muscle spasm and right anterior muscle spasm. *Id.*

On January 26, 2012, Plaintiff presented to the University of California San Francisco

1  Emergency Department due to weakness and fatigue for the last two months.  AR 310.

2  On February 6, 2012, Plaintiff presented to Dr. Kristen Day at the University of California

3  San Francisco.  AR 363.  She reported depression with decreased appetite due to stress and

4  dealing with chronic lower back pain.  *Id.*  She had poor concentration, poor sleep, feelings of

5  guilt, anhedonia, and did not enjoy the things she previously had enjoyed.  *Id.*  She had chronic

6  low back pain and Tylenol and Baclofen only gave her very minimal relief.  *Id.*  She felt

7  overwhelmed and presented as tearful with psychomotor retardation.  *Id.*  Assessment included

8  severe major depression and chronic back pain.  *Id.*

9  On October 16, 2012, Plaintiff presented to the Spine Health Clinic and described her back

10  pain as constant and 5/10 in severity.  AR 359.  She had intermittent shooting pain in her left

11  lateral leg to her left knee, which lasted a few minutes at a time.  *Id.*  She wore her lumbar support

12  all day, which was helpful.  *Id.*  Assessment included chronic mid-lower back pain most likely due

13  to degenerative changes, lumbar facet pain exacerbated by postural dysfunction/leg length

14  difference.  AR 361.  Exam showed postural issues, shoulder disparity, hip disparity with leg

15  length difference with thoracic offset, right.  *Id.*

16  On August 29, 2012, Plaintiff presented for an appointment with Dr. Day at San Francisco

17  General Hospital Family Health Center for pain consultation.  AR 378.  Plaintiff was tearful and

18  expressed frustration with the pain she was experiencing.  *Id.*  On examination, she had a stiff back

19  and loss of lumbar and thoracic curves.  *Id.*  Paroxetine medication had not helped her depression

20  much.  *Id.*  Assessment included major depression, back pain and myofascial dysfunction, and that

21  she needed to follow up with medical care.  *Id.*  Dr. Day increased Plaintiff's paroxetine dosage to

22  30mg per day and refilled her Tramadol medication.  *Id.*

23  On February 5, 2013, Plaintiff presented to the Spine Health Clinic and reported her back

24  pain had worsened since her last appointment.  AR 357.  She described her pain as 7/10 in her

25  upper, mid, and lower back, and she was tearful.  *Id.*  Her mood was "ok," but her pain made her

26  more depressed and her pain interfered with her ability to function.  *Id.*  On examination, she had

27  widespread paraspinal tenderness and periscapular tenderness to palpation.  AR 358.  Assessment

28  included widespread back pain most likely due to a combination of spondylosis/facetogenic,

3

myofascial pain and exacerbated and prolonged due to social stressors and mood. *Id.*

On April 1, 2013, Plaintiff followed up with the Spine Health Center for chronic thoracic and lower back pain. AR 321. Her pain had intensified compared to the week prior, which she described as 10/10 in severity. *Id.* She had radicular symptoms of pain in her anterior and/or posterior right and left leg down to above the knee or calf area. *Id.* On examination, myofascial tenderness was 12/18, which had been tested on the previous appointment. AR 322. Assessment included widespread back pain and body pain related to spondylosis, myofascial pain and exacerbated and prolonged due to social stressors and mood; chronic pain syndrome/fibromyalgia, which was likely as she met the diagnostic criteria. *Id.*

Dr. Calvin Pon, a State Agency Examining Physician, performed an orthopedic consultative examination on November 22, 2013. AR 404-08. Diagnoses included chronic low back pain with possible left lumbosacral nerve root impingement associated bilateral lower extremity pain and numbness, left greater than right, with objective findings of weakness of left knee flexors, sensory of left foot, and atrophy of leg; and complaints of right hand numbness with probable carpel tunnel syndrome. AR 406. Plaintiff complained of lower back pain and lower extremity pain and numbness, left side greater than right. AR 404. She stated she was limited in her housework and could not go grocery shopping, wash dishes, take out the garbage, vacuum, sweep, or mop, but she could wash clothes and prepare meals. *Id.* Plaintiff told Dr. Pon she had to stop working in 2010 due to her lower back and leg pain. *Id.*

On examination, Dr. Pon found Plaintiff's gait and stride length were slightly less than normal. AR 405. She could not squat due to pain, her movements were slow, and she had limited range of motion in thoracolumbar spine. *Id.* She had atrophy of her left leg on examination with thigh circumference right 15 ½ inch, reduced left 15 ¼ inch; calf circumference right 13 ½ inch, reduced left 13 inch. *Id.* Her range of motion in her both hips were decreased, 2+ to 3-/5, and left knee flexors were reduced to 4/5, with some weakness. *Id.* Sensory examination was decreased in the left foot. *Id.* On motor muscle testing, Plaintiff had positive right Tinel's sign and a positive right Phalen's test. *Id.* Sensory examination was decreased in the right hand. *Id.*

Dr. Pon opined Plaintiff would be able to stand and/or walk for 4-6 hours out of an 8-hour

4

work day and she could sit 6 hours out of an 8-hour work day. AR 406. She could occasionally stoop, crouch, kneel, and squat, as well as climb ladders and crawl. *Id.* She could perform pushing and pulling with her right hand frequently and unlimited with her left hand. *Id.* She could perform bilateral pushing leg/foot controls frequently. *Id.* She could carry 10 pounds frequently and 20 pounds occasionally. *Id.* She might have symptomatic (non-specific) limitations with her right hand. *Id.* No other limitations were given. *Id.*

On February 26, 2014, Plaintiff presented for a mental health intake. AR 471-74. She reported depressed mood, hopelessness, decreased energy, anxiety, fear, panic, agitation, and sleep disturbance. AR 471. Plaintiff was taking Cymbalta for depression and requested an evaluation from a psychiatrist. AR 472.

On May 6, 2014, Ms. Wiseman-Kelly completed another mental disorder assessment. AR 418-29. She noted she had treated Plaintiff weekly since April 4, 2014, for care related to adjustment disorder with depressed mood and PTSD. AR 418. Symptoms included poor sleep, low energy, helplessness, angry, and crying episodes. AR 419. She reported Plaintiff felt like a failure and rarely left her home, and that she was in constant pain, which limited her daily activities. AR 419-20. Ms. Wiseman-Kelly noted Plaintiff was a victim of domestic violence, which caused her physical and emotional pain. AR 420. She also reported Plaintiff had significant ambulatory problems that made her angry, had a difficult time with self-care because of her constant physical pain, and that her mother and son assisted her with shopping, public transportation, and maintenance of her home. *Id.*

Ms. Wiseman-Kelly opined that Plaintiff's ability to interact with the public, coworkers, and supervisors was poor. AR 424. Her ability to adapt to changes in the workplace; to be aware of normal hazards and react appropriately; and ability to use public transportation were also poor. *Id.* However, Plaintiff's ability to understand and remember very short and simple instructions, as well as detailed and complex instructions was good. AR 423. Her abilities to carry out instructions, attend and concentrate, and to work without supervision were also good. *Id.* Ms. Wiseman-Kelly opined that Plaintiff could not work part time or full time. AR 424. She had a difficult time functioning due to severe pain and medications made her sleepy and dizzy. *Id.* Her

prognosis was fair. *Id.*

Ute Kollath, Ph.D., a State Agency examining physician, performed a psychological consultative examination on June 17, 2014. AR 430-36. Diagnoses included Axis I adjustment disorder with mixed anxiety and depressed mood, alcohol abuse in remission; Axis II malingering for cognition; and Axis V Global Assessment of Functioning 65. Dr. Kollath noted Plaintiff had a long history of depression and anxiety. AR 433. Her complaints were pain in back, legs, and arms; depression; anxiety; headaches; and decreased appetite. AR 430. Plaintiff presented withdrawn and she made poor eye contact, with minimal interaction throughout the evaluation. *Id.* She reported a history of abuse by her ex-husband from 1997 to 2004, and her pain triggered memories of the abuse. *Id.* In 2002, she had an injury to her hand and her back and leg pain had increased over the years. *Id.* Her pain prevented her from sleeping well at night and she was fatigued during the day. *Id.* Plaintiff reported a history of alcohol abuse, but that she decreased her consumption in the last year. AR 431. She had a medical marijuana card, which she used occasionally. *Id.*

Dr. Kollath noted Plaintiff presented with variable motivation and her results were thought to be an unreliable representation of her psychological functioning. AR 432. Cognitive testing revealed her MMSE (Mini Mental State Exam) was 19/30 and attention and memory were impaired and her concentration was adequate. *Id.* Judgment and insight were limited to fair. *Id.* Plaintiff's mood was depressed, her affect was tearful, and her thought process was slowed. *Id.* Her prognosis was fair and she was emotionally impaired. *Id.*

On July 30, 2014, Dr. Day wrote a letter on Plaintiff's behalf for the CalWORKs program. AR 447. Dr. Day stated she started treating Plaintiff in June 2005, which she described as "a very stressful period for both physical and life stressors" for Plaintiff. *Id.* Her muscular spasm interfered with her ability to function normally and she was titrated on narcotic pain medication at the end of 2005. *Id.* There was a lapse in medical care from 2010 to 2012, at which time she lived in the East Bay. *Id.* In August 2012, Plaintiff re-established care with Dr. Day. *Id.* In September 2012, her pain worsened, and she was subsequently treated at the Spine Health Clinic. *Id.* She also attended pain group meetings and physical therapy. *Id.* Dr. Day reported: "Despite all this

hard work, she was still having symptoms that persisted. Thus it became clear that her condition was a continuation of her same problems that she had prior, and I dated her onset of condition back to 2005." *Id.*

On August 27, 2014, Plaintiff followed up with Dr. Day, who assessed myalgia and myositis. AR 461. She saw Dr. Day again on November 26, 2014, for lower back pain, depression, and PTSD. AR 458. Plaintiff was tearful when discussing past traumatic events related to her PTSD. AR 459. Assessments included myalgia and myositis. *Id.*

On December 18, 2014, Cynthia Wiseman-Kelly, a Licensed Certified Social Worker ("LCSW"), noted symptoms related to depression and anxiety. AR 475-77. Plaintiff indicated she was able to maintain her household on some days, but had severe back pain that caused her to be bed-bound at times. AR 475. She reported a history of domestic violence, sexual abuse, and physical abuse. AR 476. Plaintiff continued to feel depressed due to her physical limitations and her inability to work. *Id.*

On January 28, 2015, Plaintiff followed up with Dr. Day for pain and elevated blood pressure, possibly due to pain. AR 456. She reported that an increased dose of Venlafaxine medication gave her side effects of "super-jittery," so she stopped the medication altogether. AR 457. Assessment included myalgia and myositis. *Id.*

On April 1, 2015, Plaintiff followed up with Dr. Day. AR 455. She reported flashback-type memories of her previous domestic violence by her ex-husband and that her medications were not helpful. *Id.* Assessments included myalgia and myositis, PTSD, and dyspepsia. AR 456.

On May 12, 2015, Ms. Wiseman-Kelly completed a Mental Functional Assessment. AR 437-38. Diagnoses included PTSD and adjustment disorder with anxiety and depressed mood. AR 437. Plaintiff had difficulty concentrating due to constant pain and she appeared to be in constant pain during sessions. *Id.* She took pain medications at every session due to pain. *Id.* She had problems sitting, standing, and using public transportation due to pain. AR 438. Plaintiff was often tearful due to her back injury and constant pain. *Id.* Ms. Wiseman-Kelly opined Plaintiff would have marked limitations in activities of daily living due to lower back pain, which prevented her from sleeping and standing for long periods of time. AR 437. She would have

marked limitations in social functioning; concentration, persistence, and pace; and in the ability to adapt to work type settings. AR 437-38. Plaintiff suffered from lower back pain due to physical abuse from her ex-husband and she was a victim of childhood sexual abuse from a family member. AR 438. She had a difficult time adjusting to her disability and accepting her condition. *Id.* Ms. Wiseman-Kelly noted Plaintiff had a history of alcohol abuse, but she had been sober. *Id.*

On May 22, 2015, Plaintiff followed up with Cynthia Wiseman-Kelly and reported feelings of worthlessness, hopelessness, isolative behavior, amotivation, poor sleep, fatigue, and difficulty concentrating. AR 479-81. She had chronic worry and had many sleepless nights. AR 480. Ms. Wiseman-Kelly reported Plaintiff was significantly depressed with sleepless nights and shooting pains in both legs. *Id.* Plaintiff also reported anxiety attacks, which limited her ability to function. *Id.*

The record indicates that a June 23, 2015, lumbar spine x-ray revealed Plaintiff had a "normal lumbar spine." AR 371. On January 17, 2006, an MRI of her thoracic and lumbar spine showed degenerative spurring at the left SI-joint with normal alignment. AR 352.

Dr. Day completed a medical source statement on July 31, 2015. AR 442-46. Dr. Day noted she had treated Plaintiff since 2005 for myofascial spasm. AR 442. Symptoms included myofascial low pain back and acute stress reactions. *Id.* Objective findings included paraspinal spasm with pain radiating into her legs. *Id.* Spasms were present in thoracic and lumbar spinal areas. *Id.* Dr. Day opined Plaintiff would be able to sit for 30-45 minutes at one time for a total of 4 hours out of an 8-hour work day. AR 443. She could be able to stand/walk for 15-30 minutes at one time for a total of 3 hours out of an 8-hour work day. *Id.* She could rarely lift up to 10 pounds; could rarely bend and reach above shoulder level; and could never squat. AR 444. Pain would affect her concentration, persistence, and pace to such as extent that it would seriously interfere with her ability to perform simple, routine work on a productive basis. AR 445. Dr. Day reported she observed Plaintiff having difficulty and the need to change positions during her 30-minute appointments with her. *Id.*

On February 2, 2016, Dr. Day completed an updated assessment form and indicated Plaintiff's conditions had not changed since her last assessment dated July 31, 2015. AR 450.

On April 13, 2016, Ms. Wiseman-Kelly completed a mental disorder assessment. AR 465-67. She opined Plaintiff would have marked limitations in her ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; her ability to perform at a consistent pace without an unreasonable number and length of rest periods; and her ability to tolerate usual stresses encountered in competitive employment. AR 466. She further opined Plaintiff would not be significantly limited in the following: ability to understand, remember, and carry out very short and simple instructions; ability to sustain an ordinary routine without special supervision; ability to make simple work-related decisions; ability to accept instructions and respond appropriately to criticism from supervisors; and ability to get along with coworkers. *Id.*

## III. SOCIAL SECURITY ADMINISTRATION PROCEEDINGS

On July 3, 2013, Plaintiff filed a claim for Disability Insurance Benefits, alleging disability beginning on July 15, 2010. AR 215-25. On January 24, 2014, the Social Security Administration denied Plaintiff's claim, finding she did not qualify for benefits. AR 142-45. Plaintiff subsequently filed a request for reconsideration, which was denied on July 21, 2014. AR 150-56. On August 20, 2014, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). AR 165-67. ALJ Robert Milton Erickson conducted a hearing on April 21, 2016. AR 43-75. Plaintiff testified in person at the hearing and was represented by counsel, Jenna M. Abel. The ALJ also heard testimony from Vocational Expert Mr. Kolmar.

### A. Plaintiff's Testimony

Plaintiff testified she suffers from lower back pain due to domestic violence and being struck in the back in 2003. AR 49. She lived with her 16-year-old son and sometimes attended his sports activities. AR 47. Plaintiff could sit for approximately 30-35 minutes at her son's activities before she needed to get up and walk due to lower back and left leg pain. AR 47-48. She also helped her son get ready for school. AR 66. Plaintiff had a cat at home, but she did not feed or change the cat's litter box. AR 49-50.

Plaintiff did not drive but instead took Muni transportation. AR 50. When using Muni, she had difficulties due to pain shooting up and down her back and into her leg, especially when

United States District Court
Northern District of California

1  the streets were rough or when the bus driver had a sudden stop.  *Id.*  Plaintiff could walk 10-12

2  minutes before she needed to stop and rest due to back and left leg pain.  AR 51.

3        Plaintiff did most of the cooking at home, mostly food that was easy to prepare, such as

4  microwavable food.  *Id.*  She had difficulty using a knife to cut vegetables and fruit due to her

5  fingers locking up.  *Id.*  She also had difficulty reaching up for food items in her kitchen, so she

6  tried to keep them at eye level.  AR 52.  Plaintiff took the bus to the grocery store but had

7  difficulty shopping and needed to sit in an electric cart.  *Id.*  She had problems waiting in the

8  grocery line and would need to sit down if she had to wait for four people in line.  AR 53.

9  Plaintiff went to the movie theater but could never stay for the whole movie due to pain.  AR 54.

10  She could only sit down for 40 minutes at the movie theater and needed to take a pain pill before

11  the movie.  *Id.*

12        Plaintiff consumed marijuana to help relieve her pain after she obtained a medical

13  marijuana card, but she had not renewed her card in a couple years.  AR 55.  She testified her pain

14  had increased over the years and had become unbearable.  AR 62.  She tried many things to

15  decrease her pain, but nothing helped.  *Id.*  She took Tylenol Codeine, which did help.  *Id.*  At

16  times, she doubled over in pain and had to shake her leg and take more than one pain pill for relief.

17  AR 63.  Plaintiff's pain and depression interfered with her concentration.  AR 64.  She had

18  suffered from depression since 2003, which had worsened.  AR 64.  She could not take care of her

19  son like she had previously.  AR 65.  She had problems sleeping at night due to pain in her back

20  and shooting pain in her leg, which occurred every day.  *Id.*  She was often extremely tired due to

21  difficulty sleeping.  *Id.*

22        Plaintiff was seeing a therapist and sometimes could not make her appointments due to

23  pain.  *Id.*  She had difficulty sitting down for the full hour at therapy and had to get up and stretch

24  during the session.  *Id.*  She did not like to be around people due to her problems and she felt she

25  was not the same person she was previously.  *Id.*  She had problems with self-care and grooming,

26  including washing her hair, and she could not take baths or showers as frequently as she had

27  previously due to pain.  AR 66.

28        Plaintiff tried to clean her home, but it took her two to three times longer compared to the

1   way she had cleaned previously.  *Id.*  In the afternoons, she lay down to help alleviate her back

2   pain and tried to catch up on sleep because she did not sleep well at night.  AR 67.

3   **B.     Vocational Expert's Testimony**

4       The vocational expert classified Plaintiff's previous work as an administrative assistant,

5   with a Specific Vocational Preparation (SVP)[1] level of 7, with a sedentary exertional level; a

6   composite job as a user support analyst, performed at SVP 5, with a sedentary exertional level;

7   and as a telephone operator, SVP of 3, with a sedentary exertional level.  AR 69.

8       The ALJ posed hypothetical questions to the vocational expert.  The first hypothetical

9   question assumed the following limitations: lift or carry 20 pounds occasionally, 10 pounds

10  frequently, stand or walk 6 hours out of an 8-hour workday, sit 6 hours out of an 8-hour workday,

11  push or pull consistent with lifting, and occasionally climb, stoop, crawl, crouch, kneel, frequently

12  balance, and avoid concentrated exposure to extreme cold or a hazardous work environment.  AR

13  70.  The individual could complete tasks, follow instructions without substantial additional

14  supervision and maintain adequate attention, concentration, persistence, and pace as needed to

15  sustain a normal workday and workweek.  *Id.*  The vocational expert testified the hypothetical

16  individual could perform work as an administrative assistant, user support analyst, and telephone

17  operator as customarily or actually performed.  AR 70.

18      The ALJ's second hypothetical question assumed the following limitations: only a slight

19  variation on hypothetical one, which included change standing or walking to 4 hours out of 6

20  hours out of an 8-hour workday and sit 6 hours out of an 8-hour workday; push and pull with

21  bilateral lower extremities frequently and with the right upper extremity frequently; and

22  occasionally climb, stoop, crawl, crouch, or kneel.  AR 71.  The vocational expert testified the

23  hypothetical individual could perform all the employment he cited in hypothetical number one.

24  *Id.*

25      The ALJ's third hypothetical question assumed the following limitations: lift or carry

26

27  [1] "The Dictionary of Occupational Titles lists an SVP time for each described occupation.  Using
    the skill level definitions in 20 C.F.R §§ 404.1568 and 416.968, unskilled work corresponds to an
28  SVP of 1-2; semi-skilled work corresponds to an SVP of 3-4; and skilled work corresponds to an
    SVP of 5-9 in the DOT."  Social Security Ruling 00-4p.

occasionally 10 pounds, stand or walk 3 hours out of an 8-hour workday with no more than 15-30 minutes continuously; sit for 4 hours out of an 8-hour workday with no more than 30 minutes continuously; never crouch; occasionally stoop; and occasionally reach above the shoulder with the right upper extremity.  AR 71.  The vocational expert testified that the hypothetical individual could not perform work because the combination of walking three hours and sitting four hours combined is less than a full 8-hour workday.  AR 72.

Next, Plaintiff's counsel asked a hypothetical question to the vocational expert, referring to the mental disorder assessment completed by Ms. Wiseman Kelly, and asked whether an individual could work given the following limitations: marked limitations in ability to perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances and the ability to perform at a consistent pace without an unreasonable number and length of rest periods, and in the ability to tolerate usual stresses encountered in competitive employment.  AR 72-73.  The vocational expert testified the hypothetical individual could not perform the work because the individual would not be able to keep up with a schedule, would not be punctual, and would not maintain an expected pace they would not be able to sustain any employment.  AR 73.  The vocational expert also testified that employers would not tolerate additional rest periods.  *Id.*

## C.    ALJ's Decision and Plaintiff's Appeal

On July 14, 2016, the ALJ issued an unfavorable decision finding Plaintiff was not disabled.  AR 23-37.  This decision became final when the Appeals Council declined to review it on September 29, 2017.  AR 1-6.  Having exhausted all administrative remedies, Plaintiff commenced this action for judicial review pursuant to 42 U.S.C. § 405(g).  On August 8, 2018, Plaintiff filed the present Motion for Summary Judgment.  On August 22, 2018, Defendant filed a Cross-Motion for Summary Judgment.  Plaintiff did not file a reply

## IV.    STANDARD OF REVIEW

This Court has jurisdiction to review final decisions of the Commissioner pursuant to 42 U.S.C. § 405(g).  The ALJ's decision must be affirmed if the findings are "supported by substantial evidence and if the [ALJ] applied the correct legal standards."  *Holohan v. Massanari*,

246 F.3d 1195, 1201 (9th Cir. 2001) (citation omitted). "Substantial evidence means more than a scintilla but less than a preponderance" of evidence that "a reasonable person might accept as adequate to support a conclusion." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (quoting *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995)). The court must consider the administrative record as a whole, weighing the evidence that both supports and detracts from the ALJ's conclusion. *McAllister v. Sullivan*, 888 F.2d 599, 602 (9th Cir. 1989). However, "where the evidence is susceptible to more than one rational interpretation," the court must uphold the ALJ's decision. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). Determinations of credibility, resolution of conflicts in medical testimony, and all other ambiguities are to be resolved by the ALJ. *Id.*

Additionally, the harmless error rule applies where substantial evidence otherwise supports the ALJ's decision. *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012). "[A]n error is harmless so long as there remains substantial evidence supporting the ALJ's decision and the error 'does not negate the validity of the ALJ's ultimate conclusion.'" *Id.* (quoting *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004)). A court may not reverse an ALJ's decision because of an error that is harmless. *Id.* at 1111 (citing *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055-56 (9th Cir. 2006)). "'[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination.'" *Id.* (quoting *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009)).

## V. DISCUSSION

### A. Framework for Determining Whether a Claimant Is Disabled

The regulations promulgated by the Commissioner of Social Security provide for a five-step sequential analysis to determine whether a Social Security claimant is disabled.[2] 20 C.F.R. § 404.1520. The sequential inquiry is terminated when "a question is answered affirmatively or negatively in such a way that a decision can be made that a claimant is or is not disabled." *Pitzer*

---

[2] Disability is "the inability to engage in any substantial gainful activity" because of a medical impairment which can result in death or "which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

United States District Court
Northern District of California

*v. Sullivan*, 908 F.2d 502, 504 (9th Cir. 1990). During the first four steps of this sequential inquiry, the claimant bears the burden of proof to demonstrate disability. *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009). At step five, the burden shifts to the Commissioner "to show that the claimant can do other kinds of work." *Id.* (quoting *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988)).

The ALJ must first determine whether the claimant is performing "substantial gainful activity," which would mandate that the claimant be found not disabled regardless of medical condition, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(i), (b). Here, the ALJ determined Plaintiff had not performed substantial gainful activity since July 15, 2010. AR 28.

At step two, the ALJ must determine, based on medical findings, whether the claimant has a "severe" impairment or combination of impairments as defined by the Social Security Act. 20 C.F.R. § 404.1520(a)(4)(ii). If no severe impairment is found, the claimant is not disabled. 20 C.F.R. § 404.1520(c). Here, the ALJ determined Plaintiff had the following severe impairments: chronic pain syndrome. AR 28.

If the ALJ determines that the claimant has a severe impairment, the process proceeds to the third step, where the ALJ must determine whether the claimant has an impairment or combination of impairments that meet or equals an impairment listed in 20 C.F.R. Part 404, Subpt. P, App. 1 (the "Listing of Impairments"). 20 C.F.R. § 404.1520(a)(4)(iii). If a claimant's impairment either meets the listed criteria for the diagnosis or is medically equivalent to the criteria of the diagnosis, he is conclusively presumed to be disabled, without considering age, education and work experience. 20 C.F.R. § 404.1520(d). Here, the ALJ determined Plaintiff did not have an impairment or combination of impairments that meets the listings. AR 32.

Before proceeding to step four, the ALJ must determine the claimant's Residual Function Capacity ("RFC"). 20 C.F.R. § 404.1520(e). RFC refers to what an individual can do in a work setting, despite mental or physical limitations caused by impairments or related symptoms. 20 C.F.R. § 404.1545(a)(1). In assessing an individual's RFC, the ALJ must consider all the claimant's medically determinable impairments, including the medically determinable impairments that are nonsevere. 20 C.F.R. § 404.1545(e). Here, the ALJ determined Plaintiff has

the RFC to perform light work.[3] AR 32. However, the ALJ imposed additional limitations: "[Plaintiff] is limited to occasionally climbing, stooping, crawling, crouching, and kneeling; frequently balancing; and avoiding concentrated exposure to extreme cold or hazardous work environments." AR 32.

The fourth step of the evaluation process requires that the ALJ determine whether the claimant's RFC is sufficient to perform past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv); 404.1520(f). Past relevant work is work performed within the past 15 years that was substantial gainful activity, and that lasted long enough for the claimant to learn to do it. 20 C.F.R. § 404.1560(b)(1). If the claimant has the RFC to do his past relevant work, the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4) (iv). Here, the ALJ determined Plaintiff could perform past relevant work as an administrative assistant and a combination job of user-support analyst and telephone operator. AR 36.

In the fifth step of the analysis, the burden shifts to the Commissioner to prove that there are other jobs existing in significant numbers in the national economy which the claimant can perform consistent with the claimant's RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g); 404.1560(c). The Commissioner can meet this burden by relying on the testimony of a vocational expert or by reference to the Medical-Vocational Guidelines at 20 C.F.R. pt. 404, Subpt. P, App. 2. *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006). Here, because the ALJ determined Plaintiff could perform past relevant work, he did not reach the fifth step of the analysis.

**B.    Plaintiff's Arguments**

Plaintiff raises two arguments in her motion: (1) the ALJ committed error when he failed to find severe mental impairments; and (2) the ALJ committed error in "discrediting and ignoring"

---

[3] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567(b).

15

United States District Court
Northern District of California

LCSW Cynthia Wiseman Kelly's treatment notes and selectively relying on records indicating improvement.

### 1.   Mental Impairments

Plaintiff first argues the ALJ erred by failing to consider adjustment disorder with mixed anxiety and depressed mood, major depressive disorder, and PTSD as severe impairments.  Pl.'s Mot. at 6-7.  The ALJ found Plaintiff's mental impairments "do not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and is therefore nonsevere."  AR 28.  However, Plaintiff contends the medical evidence shows the opposite.  Pl.'s Mot. at 7.  Defendant argues the Court should affirm the decision because the ALJ set forth valid reasons based upon the record for finding Plaintiff did not suffer from a sufficiently severe mental impairment other than chronic pain syndrome that significantly impacted her ability to perform work activity.  Def.'s Mot. at 7.

"At step two of the five-step sequential inquiry, the Commissioner determines whether the claimant has a medically severe impairment or combination of impairments."  *Smolen v. Chater*, 80 F.3d 1273, 1289-90 (9th Cir. 1996) (citation omitted).  "The Social Security Regulations and Rulings, as well as case law applying them, discuss the step two severity determination in terms of what is 'not severe.'  According to the Commissioner's regulations, 'an impairment is not severe if it does not significantly limit [the claimant's] physical ability to do basic work activities.'"  *Id.* at 1290 (citing and quoting 20 C.F.R. §§ 404.1520(c), 404.1521(a) (1991)).  At step two, "the ALJ must consider the combined effect of all of the claimant's impairments on [his or] her ability to function, without regard to whether each alone was sufficiently severe. . . .  Also, [the ALJ] is required to consider the claimant's subjective symptoms, such as pain or fatigue, in determining severity."  *Id.* (citations omitted).  "[T]he step-two inquiry is a de minimis screening device to dispose of groundless claims . . ..  An impairment or combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality that has 'no more than a minimal effect on an individuals' ability to work.'"  *Id.* (citations omitted).  The claimant bears the burden of making a threshold showing of medical severity.  *Bowen v. Yuckert*, 482 U.S. 137, 149-50 (1987).

16

Evaluating the severity of an alleged mental impairment requires a special technique. *See* 20 C.F.R. § 404.1520a. If the claimant has a medically determinable mental impairment, the ALJ will rate the degree to which the impairment impedes the claimant's functioning in four broad areas: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation. *Hoopai v. Astrue*, 499 F.3d 1071, 1077-78 (9th Cir. 2007); 20 C.F.R. §§ 1520a(c)(3), (4). If the ALJ concludes that the impairment causes no more than mild limitations in the four broad areas, then, absent other evidence, the ALJ will generally conclude that the impairment is not severe. 20 C.F.R. § 1520a(d)(1).

Having reviewed the ALJ's decision and the evidence of record, the Court finds the ALJ's finding regarding Plaintiff's mental impairment is supported by substantial evidence. The ALJ rated Plaintiff in all four areas. First, as to Plaintiff's daily activities, the ALJ noted Plaintiff

> is able to maintain a relatively full range of activities of daily living, "including independent personal care, cooking and preparing meals, doing laundry and housecleaning (including sweeping and mopping), exercising, going on a vacation, taking night classes, and caring for her teenaged son, who, reportedly, does not do routine chores. She was able to care for a pet cat, including cleaning the cat litter, grooming him, feeding him, and filling his water. The claimant was also able to help care for a brother with stage 4 cancer.

AR 29 (citing (AR 261-71, 404-08, 430-36, 451-63, 468-88, 491-515). Second, as to social functioning, the ALJ found no significant limitation because Plaintiff

> was able to live with her teenaged son, attend family events, spend time with others once every couple of months, participate in group pain therapy, get along 'fine' with authority figures, interact appropriately at the hearing and at medical appointments, shop in stores, go to movies, go out to lunch, attend her son's football games, and use public transportation, activities that generally require significant contact with others.

AR 29-30 (citing AR 261-71, 350-94, 491-515). Third, the ALJ found no significant limitation in Plaintiff's concentration, persistence, or pace, based on evidence that she

> was able to maintain sufficient focus to perform a wide range of activities of daily living as described above, as well as help her son with homework, make change at the store, read, listen to music, watch a movie when allowed to stand to relieve pain, attend her son's football games if able to walk around to relieve pain, follow written and spoken instructions 'very well,' take night classes, and manage her own finances.

17

AR 30 (citing AR 261-71, 430-36, 468-88, 491-515). Fourth, the ALJ found no evidence in the record of any episodes of decompensation. *Id.* Based on this record, the ALJ found Plaintiff had no significant limitations. AR 29-30. The Court finds this constitutes substantial evidence that supports the ALJ's findings. *See Molina*, 674 F.3d at 1112-13 (in the context of discrediting a claimant's testimony, the court found that "when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting . . . [e]ven where those activities suggest some difficulty functioning, they may be grounds for discrediting" claims of disability); *Molina v. Berryhill*, 2017 WL 2793813, at *16 (N.D. Cal. June 28, 2017) (finding substantial evidence supported the ALJ's finding that the plaintiff's daily living activities did not support a finding of severe mental impairment where the plaintiff indicated "[h]e is able to do everything that is needed in daily activities" including household chores, preparing meals, watching TV, caring for himself and his children and sometimes taking them places, driving, visiting with friends and family).

Despite this, Plaintiff maintains the record shows objective evidence of her symptoms related to depression "that had more than a minimal effect on her ability to perform basic work activities." Pl.'s Mot. at 7. In support, she points to Ms. Wiseman-Kelly's opinion. *Id.* at 7-9. However, as discussed below, the ALJ set forth valid reasons for discounting Ms. Wiseman-Kelly's opinion. Plaintiff also points to Dr. Day's diagnosis of Major Depression Disorder and that Duloxetine was prescribed. *Id.* at 9 (citing AR 351). However, a diagnosis is not determinative as to whether an impairment is severe. *Nguyen v. Colvin*, 639 Fed. App'x 510, 510 (9th Cir. 2016) ("A diagnosis, in itself, is not sufficient to establish a disability" because the "claimant must show that she has a severe impairment"). Further, when objective psychological testing was performed, the diagnosis was "Adjustment Disorder With Mixed Anxiety and Depressed Mood" with no limitations as to Plaintiff's ability to perform work related activities. AR 433. As the ALJ noted, "Dr. Kollath was unable to assess [Plaintiff's] ability to maintain adequate pace and persistence, due to [Plaintiff's] limited effort during testing; however, Dr. Kollath otherwise opined the claimant was mentally unimpaired." AR 30 (citing AR 430-36).

Regardless, "omissions at step two are often harmless error if step two is decided in

18

plaintiff's favor." *Nicholson v. Colvin*, 106 F. Supp. 3d 1190, 1195 (D. Or. 2015) (citing *Burch v. Barnhart*, 400 F.3d 676, 682 (9th Cir. 2005) (concluding that any error the ALJ committed at step two was harmless because it did not alter the outcome of step two, and the step was resolved in claimant's favor); *see also Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007) (finding harmless an ALJ's failure to list certain impairment at step two where the ALJ fully evaluated the impairment at step four); *Smolen*, 80 F.3d at 1290 (if one severe impairment exists, all medically determinable impairments, and their combined impact on the claimant's RFC and ability to perform work, must be considered in the remaining steps of the sequential analysis) (citing 20 C.F.R. § 404.1523)). Step two serves only to eliminate groundless claims of disability from claimants who have no impairments or combination of impairments that sufficiently limit their functionality to constitute severe impairments. *Smolen*, 80 F.3d at 1290 ("the step-two inquiry is a de minimis screening device to dispose of groundless claims"). Thus, as the ALJ found Plaintiff had one severe impairment and moved on to complete the sequential analysis, giving consideration to all her severe and non-severe impairments, any error in failing to name additional impairments as severe is harmless. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1042-43 (9th Cir. 2008) (error that is inconsequential to the ultimate non-disability determination is harmless error) (citations and internal quotation marks omitted); *Molina*, 674 F.3d at 1111.

Accordingly, the ALJ's decision is not to be disturbed on this ground.

### 2.     LCSW Cynthia Wiseman Kelly's Opinion

Plaintiff's second argument is that the ALJ erred in discrediting Ms. Wiseman-Kelly's opinion because he ignored her treatment notes and selectively relied on records indicating improvement and relatively intact daily activities. Pl.'s Mot. at 11.

When determining whether a claimant is disabled, the ALJ must consider each medical opinion in the record together with the rest of the relevant evidence. 20 C.F.R. § 416.927(b); *Zamora v. Astrue*, 2010 WL 3814179, at *3 (N.D. Cal. Sept. 27, 2010). In deciding how much weight to give to any medical opinion, the ALJ considers the extent to which the medical source presents relevant evidence to support the opinion. 20 C.F.R. § 416.927(c)(3). Generally, more weight will be given to an opinion that is supported by medical signs and laboratory findings, as

well as the degree to which the opinion provides supporting explanations and is consistent with the record as a whole.  20 C.F.R. § 416.927(c)(3)-(4).

As a preliminary matter, the ALJ correctly noted Ms. Wiseman-Kelly, as a Licensed Certified Social Worker, was not an acceptable medical source.  To establish the existence of a medically determinable impairment, the ALJ properly considered only evidence from "acceptable medical sources," such as licensed doctors.  20 C.F.R. § 416.927(a)(1).[4]  Social workers are expressly excluded from this category and are instead categorized as "other sources."  20 C.F.R. § 416.913(d)(3)[5] ("other sources" include "[p]ublic and private social welfare agency personnel");  *Turner v. Comm'r of Social Sec.*, 613 F.3d 1217, 1223-24 (9th Cir. 2010) ("as a social worker, McFarland is not considered an "acceptable medical source[ ]" under the regulations," which "treat '[p]ublic and private social welfare agency personnel' as 'other sources,'" (quoting 20 C.F.R. § 404.1513(d)(3), the identically worded Title II regulation)).[6]  As a licensed clinical social worker is not considered an "acceptable medical source" under the Commissioner's regulations, the ALJ "may expressly disregard [such] lay testimony" if he "gives germane reasons" for doing so.  *Turner*, 613 F.3d at 1223-24 (citing *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001).  Here, the ALJ has set forth germane reasons for giving Ms. Wiseman-Kelly's opinion "little weight."  AR 31-32.

First, the ALJ found her opinion was inconsistent with Plaintiff's self-reported daily activities.  AR 31.  As discussed above, the ALJ noted Plaintiff is able to maintain a relatively full range of daily activities, including independent personal care, cooking and preparing meals, doing laundry and housecleaning, exercising, going on a vacation, taking night classes, caring for her teenaged son and pet cat, shopping, going to movies, going out to lunch, attending her son's football games, and using public transportation.  AR 29-30.  Such activities are inconsistent with allegations of disability.  *See Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175 (9th Cir. 2008)

---

[4] 20 C.F.R. § 416.927 is only applicable to claims, such as this one, filed before March 27, 2017.
[5] 20 C.F.R. § 416.913 was revised effective March 27, 2017.  This order references the previous version in effect at the time of Plaintiff's claim.
[6] 20 C.F.R. § 404.1513 was revised effective March 27, 2017.  This order references the previous version in effect at the time of Plaintiff's claim.

(finding daily activities such as cooking, house cleaning, doing laundry, and managing finances "suggest that the claimant may still be capable of performing the basic demands of competitive, remunerative, unskilled work on a sustained basis."); *Mayes v. Massanari*, 276 F.3d 453, 457, 461 (9th Cir. 2001) (claimant's "testimony that she could do many daily activities," including watching television, straightening up her house, and shopping, "suggested that she could also work"). The Court finds this is a legally sound reason to discount Ms. Wiseman-Kelly's opinion. *See Fisher v. Astrue*, 429 F. App'x 649, 652 (9th Cir. 2011) (concluding that conflict between a doctor's opinion and the claimant's daily activities was a legally sound reason to discount the opinion).

Plaintiff argues the ALJ erred in his consideration of her daily activities because he did not discuss all evidence in the record, such as her complaints that she was unable to walk at times due to pain and her fear that "one day [she] will need[ ] a wheelchair to get around" (AR 501), that her pain caused lack of sleep (AR 502), that she was "unable to do much of anything because of back and leg pain" (AR 503), and that she could not visit her family due to pain (AR 508). Pl.'s Mot. at 11. Plaintiff notes Ms. Wiseman-Kelly treated her for two years and they had over 75 appointments together, but contends the ALJ only references a few of the appointments. *Id.* However, in his analysis, the ALJ summarized and cited repeatedly to these records as Exhibit 20F. *See* AR 29-30, 33-35. Regardless, "where the evidence is susceptible to more than one rational interpretation," the Court must uphold the ALJ's decision. *Magallanes*, 881 F.2d at 750; *see also Batson*, 359 F.3d at 1196) ("When evidence reasonably supports either confirming or reversing the ALJ's decision, we may not substitute our judgment for that of the ALJ.") (citing *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). It is the ALJ's responsibility to resolve determinations of credibility, conflicts in medical testimony, and all other ambiguities. *Batson*, 359 F.3d at 1196; *Magallanes*, 881 F.2d at 750.

Second, the ALJ considered medical evidence that contradicts Ms. Wiseman-Kelly's opinion. The ALJ noted that consultative examiner Dr. Pon opined Plaintiff "could perform modified light work, with limitations of standing and/or walking a total of four to six hours in an eight hour day, occasionally to frequently climbing stairs, and occasionally climbing ladders,

crawling, crouching, kneeling, and squatting (Ex. 7F);" that Hattie Grundland, NP, described Plaintiff as "not limited in her usual [activities of daily living]" and able to sit 30 minutes to an hour and stand an hour, with no walking limitations (Exs. 2-3F);" and that "State agency medical consultants Ramona Minnis, M.D. and I. Newton, M.D. opined the claimant could perform light work with frequent balancing, occasional other postural activities . . .." AR 35; *see* AR 84-86, 97-99, 115-18). An ALJ may reject an opinion based on an examining physician's or non-examining physician's opinion. *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) (examining physicians' opinions "serve as substantial evidence supporting the ALJ's findings). The ALJ may also rely on a non-examining physician's opinion to determine a claimant's limitations. *Bray v. Astrue*, 554 F.3d 1219, 1228 (9th Cir. 2009). Thus, the ALJ properly relied on these opinions.

Third, the ALJ found Ms. Wiseman-Kelly "accepted the claimant's statements that her limitations have existed since 2010, even though [she] did not begin treating the claimant until 2014, and based her opinions on these subjective statements without support from objective evidence." *Id.* at 31-32. A review of Ms. Wiseman-Kelly's handwritten notes supports this finding as they merely restate Plaintiff's complaints and do not evidence any clinical testing, diagnoses, or treatment. AR 492-515. As the ALJ noted:

> Significantly, Ms. Wiseman-Kelly admitted that she did not base her opinions on any standardized psychological testing. . . . I also note that Ms. Wiseman-Kelly repeatedly based her justification for assessing various functional limitations on the claimant's subjectively reported physical pain and related difficulties, rather than any psychological impairment . . ..

AR 31-32. An ALJ properly disregards an opinion where it lacks supportive objective evidence. *Batson*, 359 F.3d at 1195; *see also Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) (discrepancies between opinion source's functional assessment and that source's clinical notes, recorded observations and other comments regarding capabilities is valid reason for not relying on that assessment); *Weetman v. Sullivan*, 877 F.2d 20, 23 (9th Cir. 1989).

For these reasons, the ALJ did not err in giving Ms. Wiseman-Kelly's opinion little weight.

## VI. CONCLUSION

For the reasons stated above, the Court the Court hereby **DENIES** Plaintiff's motion and **GRANTS** Defendant's cross-motion. The Court shall enter a separate judgment, after which the Clerk of Court shall terminate the case.

**IT IS SO ORDERED.**

Dated: September 25, 2018

THOMAS S. HIXSON
United States Magistrate Judge